# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2711

_____

United States of America,　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Appellee,　　　　　　　　*
　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　*　District of South Dakota.
Dale Joseph Martin,　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Appellant.　　　　　　　*

_____

Submitted: December 14, 2004
Filed: June 28, 2005

_____

Before WOLLMAN, LAY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Dale Joseph Martin entered a conditional plea of guilty to a charge of possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). The district court[1] sentenced Martin to six months' imprisonment to be followed by two years of supervised release. Martin appealed the denial of his motion to suppress. We affirm.

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

## I.

On August 3, 2003, Oglala Sioux Tribal Department of Public Safety Officer Keith Grube and United States Bureau of Indian Affairs Police Officer Steven Knispel were conducting traffic patrol in Pine Ridge. Grube observed that the right brake light on a red Chevrolet Monte Carlo driven by Martin did not illuminate when the car approached a stop sign. Knispel later testified that he thought that both brake lights were out. Based on his observation of the unilluminated right brake light, Grube directed the car to stop and approached the driver.

Grube then asked for Martin's driver's license. Martin appeared to be nervous and started to shake. Grube asked Martin to step out of the vehicle and gave him a citation for driving without a license. After completing the citation, Grube asked Martin if he had anything in the vehicle that Grube should know about. Martin became more nervous, and Grube asked for permission to search the vehicle. Martin responded "no" in a slurred voice and appeared very nervous.

At that point, Grube retrieved a drug dog from his patrol car. Martin became more agitated, put his hands on his head, and walked across the street. The dog sniffed around Martin's vehicle and alerted at both the left front door seam and the driver's side rear quarter panel. The district court found that the time between Grube's delivery of the citation to Martin and the drug dog's alert was about two minutes.

During this period, Martin approached Officer Knispel, and Knispel asked whether there was something in the vehicle that police should know about. Martin answered "yes," Knispel shrugged his shoulders, and Martin said "marijuana." When Knispel asked how much, Martin said one pound. Knispel then handcuffed Martin and took him into custody. After the dog alerted, officers searched the vehicle and found an open bag with marijuana, some cash, and a small scale.

Martin moved to suppress the evidence seized as a result of the stop. After the district court denied the motion, Martin entered a conditional plea of guilty to an indictment charging possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). The district court granted Martin's motion for downward departure from the otherwise applicable (and then-mandatory) sentencing guideline range, and sentenced him to six months' imprisonment.

II.

Martin first argues that the traffic stop was not reasonable. A traffic stop generally must be supported by "at least a reasonable, articulable suspicion that criminal activity has occurred or is occurring," and "a traffic violation – however minor– creates probable cause to stop the driver of a vehicle." *United States v. Fuse*, 391 F.3d 924, 927 (8th Cir. 2004) (quotations omitted). Martin argues that his operation of a vehicle with one non-functioning brake light did not violate the Tribe's Motor Vehicle Code, and that because his conduct was entirely lawful, Grube did not have reasonable suspicion to make the traffic stop.

Section 621 of the Tribe's Motor Vehicle Code, discussing unsafe vehicles, reads in pertinent part:

It shall be unlawful for any person to drive or cause to knowingly permit to be driven on any public road any motor vehicle which is in such unsafe condition so as to endanger any person or is not at all times equipped with the following:

. . . .

(3) STOP LIGHTS: All motor vehicles shall be equipped with a stop light in good working order at all times. Such stop lights to be automatically controlled by brake adjustment.

Martin asserts that because the Code requires only that his vehicle be "equipped with *a* stop light in good working order," and because the district court never found that both of his brake lights were non-functioning (the court said his vehicle had "either one or two defective tail lights"), Grube had no basis to stop Martin for violating the Motor Vehicle Code.

The determinative question is not whether Martin actually violated the Motor Vehicle Code by operating a vehicle with one defective brake light, but whether an objectively reasonable police officer could have formed a reasonable suspicion that Martin was committing a code violation. Even if Grube were mistaken about the existence of a violation, "the validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake, whether of law or fact, was an objectively reasonable one." *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005). There is no basis to question the district court's finding that Grube believed in good faith that Martin was operating a vehicle in violation of the Code. But his *subjective* good faith is not sufficient to justify the stop, for officers have an obligation to understand the laws that they are entrusted with enforcing, at least to a level that is objectively reasonable. Any mistake of law that results in a search or seizure, therefore, must be *objectively* reasonable to avoid running afoul of the Fourth Amendment.

The record is not well-developed on the question of objective reasonableness. Grube testified that despite the unusual text of the Tribe's Motor Vehicle Code, it was "common knowledge" that the law requires two functioning brake lights. There was no evidence, however, concerning the drafting history of the Code, prior enforcement of the Code's provision concerning "stop lights," the training of police concerning the requirements of the Code, or previous judicial interpretations of the "stop lights" provision. We are left, therefore, to wrestle with Grube's cursory assertion concerning "common knowledge," and the plain language of the Code.

-4-

Although the paucity of evidence presented makes this a close case, we ultimately conclude that Grube's action was not objectively unreasonable. We "should not expect state highway patrolmen to interpret the traffic laws with the subtlety and expertise of a criminal defense attorney." *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999). While an expert defense attorney, and even a federal judge, ultimately might conclude that the plain language of the Code technically requires only that a vehicle have one "stop light" in working order, we think it is fair to say that the Code is counterintuitive and confusing.

The requirement common to States in the region is that all brake lights on a vehicle like Martin's must be in good working order, *see* Iowa Code § 321.387 (1997); Minn. Stat. § 169.57 (2001); Neb. Rev. Stat. § 60-6,226 (2003); N.D. Cent. Code § 39-21-06 (2003); S.D. Codified Laws § 32-17-8.1 (2004); Wyo. Stat. § 31-5-913 (2004), and the record is silent as to why the Tribe might have varied from this norm to permit operation of a vehicle with one non-functioning brake light. Even this tribal code provision, with its odd reference to "*a* stop light" in working order, is entitled "STOP *LIGHTS*," and further provides that "[s]uch stop *lights* to be automatically controlled by brake adjustment." We recognize that a close textual analysis might explain the use of the plural in the heading and second sentence, while still making sense of a singular requirement in the first sentence, but we think the level of clarity falls short of that required to declare Officer Grube's belief and actions objectively unreasonable under the circumstances. This conclusion is consistent with our court's prior suggestion that a misunderstanding of traffic laws, if reasonable, need not invalidate a stop made on that basis. *See United States v. Geelen*, 509 F.2d 737, 744 n.9 (8th Cir. 1974) (where Iowa law enforcement officer stopped vehicle for displaying only one Indiana license plate, although Indiana – unlike two adjacent States with similar red and white plates – required only one plate, it was "irrelevant" whether officer recognized the license as an Indiana plate before the stop, because "he did not know Indiana required only one plate"); *cf. United States Lopez-Valdez*, 178 F.3d 282, 289 (5th Cir. 1999) (holding that ten years after

-5-

appellate court decision on point, "no well-trained Texas police officer could reasonably believe that white light appearing with red light through a cracked red taillight lens constituted a violation of traffic law").

Martin next contends that even if the traffic stop was reasonable, the ensuing dog sniff violated his rights under the Fourth Amendment. It is clear that a dog sniff conducted during a traffic stop that is "lawful at its inception and otherwise executed in a reasonable manner" does not infringe upon a constitutionally protected interest in privacy. *Illinois v. Caballes*, 125 S. Ct. 834, 837 (2005). A dog sniff may be the product of an unconstitutional seizure, however, if the traffic stop is unreasonably prolonged before the dog is employed. *Id*.

To establish an unreasonably prolonged detention, Martin must show that he was detained beyond the time justified by the traffic stop, and that the detention was not supported by reasonable suspicion. There is room for debate about whether Martin was seized after Officer Grube gave him a citation for driving without a license. *See United States v. Jones*, 269 F.3d 919, 925 (2001) ("[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.") (internal quotations omitted). And if he was seized, then there is a dispute over the district court's conclusion that Martin's nervous appearance and odd response to the request to search his vehicle gave officers reasonable suspicion to continue the investigative stop.

We need not resolve these issues, because our court has held that even if a dog sniff is thirty seconds to two minutes over the line drawn at the end of a routine traffic stop, a two-minute delay to conduct a canine sniff is a *de minimis* intrusion on the driver's personal liberty that does not violate the Fourth Amendment. *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 649 (8th Cir. 1999). Martin's challenge to the dog sniff thus fails in light of our clear holding that "when a police

-6-

officer makes a traffic stop and has at his immediate disposal the canine resources to employ this uniquely limited investigative procedure, it does not violate the Fourth Amendment to require that the offending motorist's detention be momentarily extended for a canine sniff of the vehicle's exterior." *Id*.

Finally, Martin argues that the district court should have suppressed his statements, made after issuance of the citation, in response to questions from Officer Grube and Officer Knispel about whether he had anything in the vehicle. Martin contends that he was "in custody" at the time, and that the officers were required to administer *Miranda* warnings before asking the questions. We reject this contention, because the full panoply of protections prescribed by *Miranda* does not apply during the course of a traffic stop where the motorist is not subjected to the functional equivalent of formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 440-42 (1984). Assuming, *arguendo*, that Martin was detained for the two minutes between delivery of the citation and the dog sniff, he was never "informed that his detention would not be temporary," and he was asked only a "modest number of questions" by the officers. *Id*. at 442. Martin was not under the equivalent of full custodial arrest, and *Miranda* warnings were thus not required. *See also $404,905.00 in U.S. Currency*, 182 F.3d at 648.

The judgment of the district court is affirmed.

———————————————