# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1220

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Nebraska. |
| Timothy W. Washington, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: May 16, 2006
Filed: August 1, 2006

_____

Before MURPHY, JOHN R. GIBSON, and BENTON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Timothy Washington entered a conditional guilty plea to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and the district court sentenced him to 21 months' imprisonment followed by 3 years of supervised release. He appeals from the district court's order denying his motion to suppress evidence obtained after police officers stopped the vehicle he was riding in for having a cracked windshield. The government concedes that having a cracked windshield does not violate Nebraska law, and Washington argues that the investigating officer therefore did not have reasonable suspicion or probable cause to stop the vehicle. We reverse the district court's order and vacate Washington's plea and sentence.

I.

On March 2, 2005, Officer Scott Antoniak was conducting traffic patrol with another officer in Omaha, Nebraska. He noticed that a 1993 Buick Regal in front of them had a horizontal crack in the windshield that "went all the way across the windshield at about eye level with little spider veins that come off the main crack." The officers decided to stop the car on the basis of the "vision obstruction" caused by the crack. They ran a data check on the driver, Kevin Wynn, which revealed that his license was suspended, so the officers handcuffed him and escorted the passenger, Washington, out of the car. Antoniak searched the car and discovered a loaded .22 caliber revolver under the passenger seat. Antoniak said that when he began to question Wynn about the gun, Washington blurted out, "[I]t's mine and I carry it for protection."

Washington was subsequently indicted for being a felon in possession of a firearm. He moved to suppress both the firearm and his statement, arguing that they were the fruit of an unconstitutional traffic stop, as no state statute or local ordinance prohibited driving with a cracked windshield. At the suppression hearing, Officer Antoniak testified to the above facts and stated that in his three and a half years as a police officer he had stopped some 100 cars for having cracked windshields. He explained that when he made such stops, he would issue a citation for "vision obstruction" and agreed that in this case the cracked windshield was the only basis he had for stopping the Buick.

In its brief to the magistrate judge, the government conceded that Officer Antoniak made a mistake of law in believing that a cracked windshield violated the vision obstruction statute, Neb. Rev. Stat. § 60-6,256. That section is entitled "Objects placed or hung to obstruct or interfere with view of operator; unlawful; penalty" and states:

It shall be unlawful for any person to operate a motor vehicle with any object placed or hung in or upon such vehicle, except required or permitted equipment of the vehicle, in such a manner as to obstruct or interfere with the view of the operator through the windshield or to prevent the operator from having a clear and full view of the road and condition of traffic behind such vehicle.

Neb. Rev. Stat. § 60-6,256 (2005). The government acknowledged that no other provision of Nebraska law prohibits driving with a cracked windshield.

The magistrate judge concluded that although Officer Antoniak was mistaken in believing that cracked windshields violated Nebraska traffic law, his mistake of law was objectively reasonable given his training and past experience and "It is further reasonable to believe it would be a violation of traffic laws to operate a motor vehicle with a vision obstruction, be it a cracked windshield or a totally obliterated windshield." The district court adopted the report and recommendation of the magistrate judge in its entirety and denied Washington's motion to suppress. The court found that Antoniak misunderstood the Nebraska motor vehicle statutes but that the misunderstanding was reasonable in light of the vision obstruction statute, Neb. Rev. Stat. § 60-6,256, as well as the view to rear statute, Neb. Rev. Stat. § 60-6,254.

II.

We review the district court's findings of fact for clear error and its legal conclusions about probable cause and reasonable suspicion de novo. Ornelas v. United States, 517 U.S. 690, 699 (1996). Under the Fourth Amendment, a traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred. United States v. Smart, 393 F.3d 767, 770 (8th Cir.), cert. denied, 125 S. Ct. 2921 (2005). It is well-established that "any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." United States v. Jones, 275 F.3d 673, 680 (8th Cir.

-3-

2001).  Nonetheless, the police must "objectively ha[ve] a reasonable basis for believing that the driver has breached a traffic law."  United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996).

We are persuaded that Officer Antoniak made a mistake of law when he stopped the Buick for having a cracked windshield.  It is clear from the plain language of the vision obstruction provision he relied on that he was mistaken in believing that it prohibited cracked windshields, as it only applies to physical objects that obstruct a driver's view.  See Neb. Rev. Stat. § 60-6,256.  Furthermore, the view to rear statute mentioned by the district court is similarly inapplicable to the facts of this case as it addresses only obstructions that affect a driver's ability to see what is behind the vehicle.  See Neb. Rev. Stat. § 60-6,254 (2005).  Finally, the government concedes that no other Nebraska law or Omaha city ordinance exists which bans driving with a cracked windshield.

In our circuit, if an officer makes a traffic stop based on a mistake of law, the legal determination of whether probable cause or reasonable suspicion existed for the stop is judged by whether the mistake of law was an "objectively reasonable one."[1]

---

[1]We recognize that other circuits have held that a police officer's mistake of law can never be objectively reasonable.  See United States v. McDonald, — F.3d — , No. 05-3761, 2006 WL 1975403, at *3 (7th Cir. July 17, 2006) ("We agree with the majority of circuits to have considered the issue that a police officer's mistake of law cannot support probable cause to conduct a stop."); United States v. Tibbets, 396 F.3d 1132, 1138 (10th Cir. 2005) ("[F]ailure to understand the law by the very person charged with enforcing it is not objectively reasonable."); United States v. Chanthasouxat, 342 F.3d 1271, 1279 (11th Cir. 2003) (no matter how reasonable or understandable a mistake of law, it cannot provide the "objectively reasonable grounds for reasonable suspicion or probable cause"); United States v. Twilley, 222 F.3d 1092, 1096 (9th Cir. 2000) ("[I]n this circuit, a belief based on a misunderstanding of the law cannot constitute the reasonable suspicion required for a constitutional traffic stop."); United States v. Miller, 146 F.3d 274, 279 (5th Cir. 1998) (where officer was mistaken about law "no objective basis for probable cause justified the stop").

-4-

Smart, 393 F.3d at 770.  Therefore, the constitutionality of the traffic stop in this case depends on whether Officer Antoniak's belief that a state law was violated was objectively reasonable.  His subjective good faith belief about the content of the law is irrelevant to our inquiry, "for officers have an obligation to understand the laws that they are entrusted with enforcing, at least to a level that is objectively reasonable." United States v. Martin, 411 F.3d 998, 1001 (8th Cir. 2005).

The question of how to determine whether a mistake of law is "objectively reasonable" was recently addressed in Martin, where we affirmed the denial of a motion to suppress based on an officer's objectively reasonable belief that operating a motor vehicle with one non-functioning brake light violated a particular provision of tribal law.  411 F.3d at 1001-02.  We determined that the officer's mistake of law was objectively reasonable based on the statute's "counterintuitive and confusing" language and concluded that "the level of clarity [of the statute] falls short of that required to declare Officer Grube's belief and actions objectively unreasonable under the circumstances."  Id. at 1002.  The officer argued that his mistaken interpretation of the law -- that it required two functioning brake lights -- was "common knowledge."  In light of the ambiguities in the statute, we noted that the following factors would be relevant to the objective reasonableness of the officer's belief:  "the drafting history of the Code, prior enforcement of the Code's provision concerning 'stop lights,' the training of police concerning the requirements of the Code, or previous judicial interpretations of the 'stop lights' provision."  Id. at 1001.

The instant case is distinguishable from Martin as we are not confronted with any "counterintuitive and confusing" motor statutes that might prohibit cracked windshields. Rather, § 60-6,256 clearly does not prohibit the conduct Officer Antoniak thought it did, and this is an unusual case as the government concedes that no other motor statute or ordinance forbids cracked windshields.  Moreover, the government has not presented any evidence of police manuals or training materials,

state case law, legislative history, or any other state custom or practice that would create some objectively reasonable basis for the traffic stop.

Consequently, the district court erred in adopting the magistrate judge's conclusion that Officer Antoniak's mistake of law was objectively reasonable based on Antoniak's "training and past experiences of prior traffic citation cases involving cracked windshields." There is no evidence that Antoniak was trained by the police department to make stops on the basis of cracked windshields. Antoniak's own past practices were based on the same mistake of law and do not create a justification for future stops. The district court also erred in adopting the magistrate judge's statement that the mistake of law was objectively reasonable because it would be reasonable for an officer to believe that having a cracked windshield must violate some traffic law in Nebraska. The concept of an objectively reasonable mistake of law cannot be so unmoored from actual legal authority. Where there is a basis in state law for an officer's action and some ambiguity or state custom that caused the officer to make the mistake, it may be objectively reasonable. See Martin, 411 F.3d at 1001-02. However, in the absence of such evidence, officers cannot act upon misunderstandings of clear statutes or, worse yet, their own notions of what the law ought to be.

Officers have broad authority to stop vehicles for any traffic violation, regardless of how minor, but they must have a legal justification for the stop that is grounded in the state's law. We conclude that Antoniak's understanding of Nebraska law was unreasonable and that the government has therefore failed to establish that it had probable cause to stop the Buick. The traffic stop was unconstitutional, and the firearm and Washington's statements to the police should have been suppressed. Accordingly, we vacate Washington's conviction and sentence.

_____

-6-