# IN THE SUPREME COURT OF IOWA

No. 08–1862

Filed November 24, 2010

**STATE OF IOWA,**

Appellant,

vs.

**DONNA KAY LOUWRENS,**

Appellee.

Appeal from the Iowa District Court for Emmet County, Donald J. Bormann, District Associate Judge.

On discretionary review, the State contends the district court erred in granting the defendant's motion to suppress. **AFFIRMED.**

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, and Douglas R. Hansen, County Attorney, for appellant.

John L. Sandy of Sandy Law Firm, P.C., Spirit Lake, for appellee.

**HECHT, Justice.**

This case presents an issue of first impression in this state—whether evidence obtained after police stopped a vehicle based on a mistake of law must be suppressed as a violation of the Fourth Amendment. We conclude the district court correctly determined the evidence derived from a stop based on a law enforcement officer's mistake of law must be suppressed.

## I. Background Facts and Proceedings.

Shortly before 1:00 a.m. on May 25, 2008, local police officers observed a car make a U-turn on Central Avenue in Estherville. Knowing that an Estherville ordinance prohibits U-turns anywhere on Central Avenue, the officers believed the driver had committed a traffic violation and stopped the car. When the officers interacted with the driver, Donna Louwrens, they suspected she was intoxicated. After failing several sobriety tests, Louwrens was taken to the law enforcement center where breath testing indicated Louwrens's blood-alcohol content was above the legal limit. She was charged with operating a vehicle while intoxicated.

Louwrens moved to suppress all evidence seized as a result of the traffic stop because "there was no probable cause to justify the police in stopping" her car. The State resisted the motion to suppress, and the parties submitted a stipulated statement of facts for the district court's consideration. The parties stipulated that although an Estherville ordinance prohibits U-turns anywhere on Central Avenue, state law, specifically Iowa Code section 321.237 (2007), dictates that such turning restrictions are not effective until signs are posted in the restricted areas. The parties further stipulated that no signs were posted in the area where Louwrens made her U-turn. The stipulation included the

State's concession "that enforcement (i.e. conviction) on the No U-turn ordinance is doubtful given the lack of proper signage."[1]

The district court concluded the officers' mistake of law could not provide probable cause for the traffic stop and granted Louwrens's motion to suppress. We granted the State's application for discretionary review of the district court's decision.

## II. Scope of Review.

We review constitutional claims de novo. *State v. Lloyd*, 701 N.W.2d 678, 680 (Iowa 2005). We independently review " 'the totality of the circumstances as shown by the entire record.' " *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001) (quoting *State v. Howard*, 509 N.W.2d 764, 767 (Iowa 1993)). We will give deference to the factual findings of the district court, but are not bound by them. *Id.*

## III. Discussion.

The district court granted Louwrens's motion to suppress, concluding the officers' mistake of law could not justify the traffic stop. The State contends this was error and argues that a reasonable mistake of law by the officer should justify a traffic stop.

As a starting point, it is well-established that the Fourth Amendment to the United States Constitution prohibits unreasonable

---

[1]On appeal, the State's brief notes in passing that the signage requirement in Iowa Code section 321.237 does not apply to a local prohibition of U-turns and suggests the officers made no mistake of law. This issue was waived because it was not presented in the district court. *State v. Brown*, 168 N.W.2d 922, 923 (Iowa 1969) ("Ordinarily issues not raised in the trial court will not be entertained on appeal."); *see also Field v. Palmer*, 592 N.W.2d 347, 350 n.1 (Iowa 1999). Moreover, passing reference to an issue, unsupported by authority or argument, is insufficient to raise the issue on appeal. *See Baker v. City of Iowa City*, 750 N.W.2d 93, 102–03 (Iowa 2008) (holding a conclusory statement without argument or supporting authority waives an issue).

searches and seizures by the government.[2]  *State v. Kinkead*, 570 N.W.2d 97, 100 (Iowa 1997).  The Fourth Amendment's proscriptions apply to state governments by way of the Due Process Clause of the Fourteenth Amendment.  *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691, 6 L. Ed. 2d 1081, 1090 (1961).  Generally, this means a search or seizure must take place pursuant to a warrant issued by a judicial officer and that searches conducted without a warrant are unreasonable, unless an exception to the warrant requirement applies. *Kinkead*, 570 N.W.2d at 100.

One such exception authorizes a law enforcement officer to stop a vehicle when the officer observes a traffic violation, no matter how minor.[3]  *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004).  The burden is on the State to prove by a preponderance of the evidence that the officer had probable cause to stop the vehicle.  *Id.*  If the State does not meet this burden, the evidence obtained through the stop must be suppressed.  *Kinkead*, 570 N.W.2d at 100.  We have previously determined that an officer's reasonable mistake of fact supporting his belief that a traffic violation or other criminal activity is underway will suffice as probable cause for a stop.  *Id.* at 101; *Lloyd*, 701 N.W.2d at 680.

---

[2]Louwrens did not argue in her motion to suppress that the officers' actions violated the Iowa Constitution.  In fact, Louwrens's motion cited to neither the Federal nor the Iowa Constitution.  The district court, however, treated Louwrens's challenge as a Fourth Amendment claim and relied solely on the Fourth Amendment to reach its decision.

[3]Police may also stop a vehicle for a brief investigatory stop if they have reasonable suspicion to believe that criminal activity is occurring, such as when officers observe erratic, but not illegal, driving that would indicate the operator of the vehicle is intoxicated.  *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004).  However, no allegation has been made in this case that the officers had grounds to suspect Louwrens was driving while intoxicated until they interacted with her during the stop. Accordingly, we will limit our analysis to determining whether the officers had probable cause to believe a traffic violation had occurred.

This case, however, presents a different question: May an officer's mistake of law provide probable cause to authorize a traffic stop? We mentioned, but did not decide this question in *Lloyd.* 701 N.W.2d at 680 n.1. A majority of courts that have considered the issue have concluded a mistake of law cannot provide probable cause to justify a traffic stop. *See United States v. McDonald*, 453 F.3d 958, 962 (7th Cir. 2006); *United States v. DeGasso*, 369 F.3d 1139, 1144–45 (10th Cir. 2004); *United States v. Chanthasouxat*, 342 F.3d 1271, 1279 (11th Cir. 2003); *United States v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000); *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998).

The State, however, urges us to adopt the minority view held by the Eighth Circuit Court of Appeals. That court has concluded "the legal determination of whether probable cause or reasonable suspicion existed for [a] stop is judged by whether the mistake of law was an 'objectively reasonable one.' " *United States v. Washington*, 455 F.3d 824, 827 (8th Cir. 2006) (quoting *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005)).

However, our review of the development of the Eighth Circuit's position does not convince us to follow suit. In *Smart,* a case in which the officer "made neither a mistake of law nor one of fact," the Eighth Circuit stated that "in our circuit the distinction between a mistake of law and a mistake of fact is irrelevant to the fourth amendment inquiry." 393 F.3d at 769, 770 (citing *United States v. Sanders,* 196 F.3d 910 (8th Cir. 1999)). However, *Sanders,* the case cited by the court for this proposition, was not analyzed as a "mistake" case and did not discuss the distinction between a mistake of law and mistake of fact for Fourth Amendment purposes. *See Sanders*, 196 F.3d at 912–13. It was not until later that year that the Eighth Circuit applied the principle

announced in *Smart* in a case actually involving a mistake of law. *United States v. Martin,* 411 F.3d 998, 1001 (8th Cir. 2005). It did so without any discussion of the competing view that a mistake of law cannot provide probable cause to justify a traffic stop. In a subsequent decision, the court acknowledged the development of a different rule in other circuits, but did not discuss the rationale supporting that rule. *Washington,* 455 F.3d at 827 n.1.

Although we can appreciate the appeal of the symmetry of the Eighth Circuit's approach treating all mistakes alike, we are ultimately persuaded that the approach acknowledging a fundamental distinction between an officer's mistake of fact and mistake of law is better-reasoned. The circuits applying the majority rule begin their analysis with the proposition that " '[t]he touchstone of the Fourth Amendment is reasonableness.' " *Chanthasouxat,* 342 F.3d at 1275 (quoting *United States v. Knights,* 534 U.S. 112, 118, 122 S. Ct. 587, 591, 151 L. Ed. 2d 497, 505 (2001)). They note that "great deference" is given to an officer's assessment of facts and recognize that an officer's mistake of fact may provide the necessary grounds to justify a stop, as long as the officer's assessment was reasonable. *Id.* at 1276. However, courts applying the majority rule temper this deference by evaluating the existence of probable cause for a stop " 'from the standpoint of an objectively reasonable police officer.' " *Id.* (quoting *Ornelas v. United States,* 517 U.S. 690, 696, 116 S. Ct. 1657, 1661–62, 134 L. Ed. 2d 911, 919 (1996)).

> [L]aw enforcement officers [have] broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justification for their actions. But the flip side of that leeway is that the legal justification must be objectively grounded.

*Miller*, 146 F.3d at 279 (footnote omitted).  Courts applying the majority rule have concluded that the legal justification for a stop based on conduct accurately observed but mistakenly understood by officers to be illegal is not "objectively grounded."  *Id.*; *accord Chanthasouxat*, 342 F.3d at 1279.

The Ninth Circuit has further reasoned in support of its adoption of the majority rule that allowing officers to justify a stop based on a misunderstanding of the law "would remove the incentive for police to make certain that they properly understand the law they are entrusted to enforce and obey."  *United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000).  Using similar reasoning, the Eleventh Circuit rejected an argument that a vague or ambiguous statute should excuse an officer's mistaken interpretation, concluding that even if the statute at issue were ambiguous, it would be inappropriate to use the ambiguity of a statute *against* a defendant.  *Chanthasouxat*, 342 F.3d at 1278.  "We . . . note the fundamental unfairness of holding citizens to 'the traditional rule that ignorance of the law is no excuse' while allowing those 'entrusted to enforce' the law to be ignorant of it."  *Id.* at 1280 (quoting *Bryan v. United States*, 524 U.S. 184, 196, 118 S. Ct. 1939, 1947, 141 L. Ed. 2d 197, 208 (1998)).

The State contends that the Third Circuit Court of Appeals' decision in *United States v. Delfin-Colina*, 464 F.3d 392 (3d Cir. 2006), supports its position that a stop may be justified by an officer's mistake of law.  We do not interpret *Delfin-Colina* to support a ruling in the State's favor in this case.  Instead we read *Delfin-Colina* as implicitly adopting the majority approach distinguishing between mistakes of fact and mistakes of law.  464 F.3d at 398–99 (discussing decisions of the Fifth, Ninth, and Eleventh Circuits).  However, the Third Circuit in

*Delfin-Colina* was confronted with a situation not yet faced by the other circuits adhering to the majority rule—a stop based on an officer's incorrect understanding of the law for conduct which nevertheless constituted, when viewed objectively, a violation of existing law. *Id.* at 399–400. The Third Circuit concluded that the fact that the officer misunderstood the scope of a traffic law, and thus made a mistake of law, did not end the analysis. *Id.* at 399. The court determined the question of whether sufficient cause existed to make a traffic stop must be viewed from the perspective of an objectively reasonable officer and not based on the subjective motivations of the officer making the stop. *Id.*; *see also Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89, 98 (1996); *Miller*, 146 F.3d at 279. The Third Circuit concluded that because the stop was objectively grounded in existing law, the officer's subjective understanding of the law was irrelevant. *Delfin-Colina*, 464 F.3d at 399–400.

We find the *Delfin-Colina* analysis fundamentally inapt in this case because we are bound by a stipulation that the officers made a mistake of law and that the no U-turn ordinance is unenforceable against Louwrens due to lack of signage. Under these circumstances, even if the *Delfin-Colina* test were applied, there was no objective legal basis for the stop.

The State also contends that we should adopt the minority view of the Eighth Circuit to avoid "an odd inconsistency if evidence discovered as a mistake of law were admissible in federal but not state court." Without further explanation of the harm which would result from this "odd inconsistency," we decline to adopt an approach to Fourth Amendment jurisprudence that we find unsound simply to avoid it.

The State's final argument is that because it can sometimes be difficult to determine whether the officer has made a mistake of fact or mistake of law, the court's time is more efficiently spent by addressing the reasonableness of the officer's belief rather than by identifying the exact nature of the mistake. *See United States v. Tibbetts*, 396 F.3d 1132, 1139 (10th Cir. 2005) (remanding to the district court to "determine whether [the officer's] belief that the law was violated . . . was correct, a reasonable mistake of fact, or an impermissible mistake of law"). In fact, the State argues that this case could easily be characterized as a mistake of fact rather than a mistake of law. "[I]t could be argued the officers made a mistake of fact about whether there were signs prohibiting U-turns on Central Avenue." While we do not doubt there may be cases in which the distinction between mistake of fact and mistake of law will be difficult to distinguish, we are confident in the majority of cases the type of mistake can be easily identified with the officer's frank testimony as to what he or she thought the law was and what facts led him or her to believe the law was being violated. While it may be easy to hypothesize various scenarios which might convert this case from one involving a mistake of law to a mistake of fact, we will not engage in such speculation. The record contains no testimony from the officers themselves but rather consists solely of a stipulation by the parties that a mistake of law was made.

For the reasons described above, we conclude the district court properly granted Louwrens's motion to suppress because the officers' mistake of law cannot provide the necessary probable cause to justify the traffic stop at issue in this case.

**AFFIRMED.**

All justices concur except Cady and Streit, JJ., who concur specially.

**CADY, Justice (special concurrence).**

I agree in the result reached by the majority, but disagree with its reasoning. The majority adopts one rule of law over another to decide the issue in this case under a set of facts in which either rule would reach the same decision. I believe we should wait to decide between the better of the two rules of law when the facts allow the fine points of the rules to be fleshed out and their true merits revealed.

The majority identifies the issue in the case as whether a mistake of law by a police officer may provide probable cause to authorize a traffic stop. It then identifies the existence of two schools of thought—a majority rule that concludes mistake of law cannot provide probable cause and a minority rule that uses the reasonableness standard of the Fourth Amendment to gauge whether a mistake can provide probable cause for a stop.

Not surprisingly, the two rules originate at the same spot—the Reasonableness Clause of the Fourth Amendment. It is universally agreed that a stop is reasonable as long as the police officer reasonably believed a criminal offense was committed, even if a defendant was not actually committing an offense. *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006). From this point, the majority reasons that a police officer's mistaken belief in the existence of a law prohibiting the conduct can never support probable cause because such a belief could never be objectively reasonable. *Id.* at 961. Of course, many policy grounds accompany this position, as the majority identifies. Yet, the minority rule actually reaches the same conclusion, and the real difference between the two approaches appears to be the willingness of the minority rule to recognize that the distinction between a mistake of

law and a mistake of fact can be very difficult to discern and depends upon the particular facts and circumstances in each case. Application of law always depends upon the facts. The minority approach simply stays with the reasonableness doctrine throughout the analysis to sort through those facts and circumstances of the case to determine if a stop tainted with mistaken impressions of the law by the police officer could nevertheless be objectively reasonable. Yet, in those cases, like this case, in which no law actually covered the conduct observed by the police officer, the mistaken belief of the police officer that the conduct violated the law can never be objectively reasonable under the minority rule. *See United States v. Washington*, 455 F.3d 824, 827–28 (8th Cir. 2006) (holding mistake of law is not objectively reasonable when the police officer believed a cracked windshield violated the law, but the actual law only prohibited physical objects on a windshield that obstructed the driver's view). Yet, like the minority rule, even the majority rule would permit an officer's mistaken impression of the law to support probable cause, as long as the law relied upon to make the stop otherwise prohibited the conduct. *See United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (finding mistake by a police officer that the tailgating law utilized a two-car-length rule nevertheless supported probable cause because a law did exist prohibiting tailgating, and the facts supported a violation of the law); *see also United States v. Martin*, 411 F.3d 998, 1001–02 (8th Cir. 2005) (finding officer's mistaken belief that operating a motor vehicle with one nonfunctioning brake light violated the law was objectively reasonable due to the statute's ambiguous terms).

Accordingly, there appears to be little difference between the two approaches in the law. The majority rule seems to address the specific

situation when no law exists that prohibits the conduct witnessed by a police officer, and the minority rule is in agreement that no probable cause could be found in such a situation. The majority rule does utilize policy arguments to support its position, yet those policy arguments are inherent in the Fourth Amendment standard of reasonableness relied upon by the minority rule. In truth, the minority rule appears to be more helpful in its analysis because it allows for a principled resolution in those cases involving a mistake of law caused by a mistaken application of the facts. The majority rule applies to pure mistake-of-law cases and requires a separate analysis of the distinction between mistake of law and mistake of fact to resolve the more difficult cases.

As a result, I believe we should not adopt what has been described as the majority rule until we have a set of facts that would allow us to gain a full understanding of the best rule or approach to follow. The facts are an important component in a legal analysis, and the rule we adopt should reflect this analysis.

Streit, J., joins this special concurrence.