# IN THE COURT OF APPEALS OF IOWA

No. 20-1740
Filed November 3, 2021


IN RE THE MARRIAGE OF JENNIFER L. SCHILTZ
AND DARWIN M. SCHILTZ

Upon the Petition of
JENNIFER L. SCHILTZ,
　　　　Petitioner-Appellee,

And Concerning
DARWIN M. SCHILTZ,
　　　　Respondent-Appellant.

_____

　　　　Appeal from the Iowa District Court for Clay County, David A. Lester, Judge.


　　　　Darwin Schiltz appeals an order modifying his stipulated dissolution decree.

**AFFIRMED.**


　　　　Angela H. Kayl, Sioux City, for appellant.

　　　　Scot L. Bauermeister of Fitzgibbons Law Firm, L.L.C., Estherville, for appellee.


　　　　Considered by Mullins, P.J., and May and Ahlers, JJ.

**MAY, Judge.**

The district court modified Darwin and Jennifer Schiltz's dissolution decree. Darwin appeals. We affirm.

**I. Background Facts**

Jennifer and Darwin have three children. In 2017, they divorced. They resolved all issues through a written stipulation. With respect to the children, they agreed to joint legal custody; Jennifer would have physical care; and Darwin would have visitation every other weekend, two weeks during the summer, and certain holidays. And they agreed Darwin's monthly child-support obligation would be $1000. The court's dissolution decree approved and adopted all of these terms.

In February 2018, Jennifer petitioned to modify support because Darwin's salary had increased. In April 2019, the court entered a modification decree setting Darwin's monthly child-support obligation at $1633.62.

In September 2019, Darwin commenced this modification action. He claimed a change in employment had reduced his out-of-town hours as well as his pay. He requested joint physical care or, alternatively, increased visitation; a reduction of his child-support obligation; and changes to his medical-support obligations.

The district court denied Darwin's request for joint physical care. But the court increased his summer visitation from two to three weeks, modified the holiday visitation schedule, and eliminated the first-refusal provision contained in the parties' original dissolution stipulation. The court also lowered Darwin's child-support obligation to $1329.99 per month and modified the decree's medical-

support provisions. The court ordered Darwin to pay $1500 of Jennifer's attorney fees as well as court costs.

Darwin moved to amend, enlarge, and modify. The court denied Darwin's motion. Darwin appeals.

## II. Scope and Standard of Review

"Petitions to modify the care provisions of a dissolution decree are tried in equity. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). So we review each issue de novo. *See* Iowa R. App. P. 6.907. But we give weight to the fact findings of the trial court, which "is greatly helped in making a wise decision about the parties" by watching and listening to them live. *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (citation omitted); *see also In re Marriage of Rademacher*, No. 11-0798, 2011 WL 5868041, at *3 (Iowa Ct. App. Nov. 23, 2011). We will affirm unless the district court "failed to do substantial equity." *Boatwright v. Lydolph*, No. 18-0532, 2019 WL 719026, at *1 (Iowa Ct. App. Feb. 20, 2019) (citation omitted).

We review a district court's award of attorney fees for an abuse of discretion. *See In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013).

## III. Analysis

On appeal, Darwin claims the district court (1) should have granted joint physical care; (2) or should have increased his visitation more; (3) incorrectly calculated child support; and (4) should not have awarded Jennifer attorney fees.[1] Each party requests appellate attorney fees. We address each claim in turn.

---

[1] Darwin makes a passing request to reverse the district court's revision of the medical-support provision of the decree and the district court's elimination of the

### a. Physical Care

A parent seeking to modify physical care provisions of a dissolution decree faces a "heavy burden." *In re Marriage of Kelly*, No. 19-1295, 2020 WL 3571863, at *2 (Iowa Ct. App. July 1, 2020). They "must prove by the preponderance of the evidence a substantial change in circumstances occurred after the decree was entered." *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). "The changed circumstances [must] meet three criteria: (1) the court did not contemplate them when entering the [prior modification]; (2) they [are] 'more or less permanent, not temporary,' and (3) they related[] to the welfare of the children." *Kelly*, 2020 WL 3571863, at *2 (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)). If this threshold requirement is established, we must still consider whether the requested change is in the children's best interests.[2] *Kelly*, 2020 WL 3571863, at *3; *cf. In re Marriage of McKee*, No. 20-1242, 2021 WL 4592258, at *3 (Iowa Ct. App. Oct. 6, 2021) (reversing modification of physical care where "no substantial change of circumstances . . . justifie[d]

---

right-of-first-refusal provision. But he provides no developed argument on these points. So we consider those claims waived. *See State v. Louwrens*, 792 N.W.2d 649, 650 n.1 (Iowa 2010) ("Moreover, passing reference to an issue, unsupported by authority or argument, is insufficient to raise the issue on appeal.").

Along similar lines, Darwin makes a passing request to reverse the district court's refusal to modify the parties' prior agreement concerning post-secondary-education expenses. But Darwin cites no authority to support his argument. So we consider it waived. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

[2] A parent seeking modification of physical care must establish their superior parenting ability if they seek to remove physical care from the other parent. *See Kelly*, 2020 WL 3571863, at *3. But that is not required when the modifying parent only seeks to be on equal footing with the other parent through shared physical care. *See id.*

abandoning the current physical care arrangement under which the youngest child has flourished").

When deciding whether a change to joint physical care is appropriate,

> we concentrate on these four factors: (1) approximation (replicating the historical care-giving arrangement between the parents); (2) the parents' ability to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) how much the parents agree in their approach to daily matters.

*Kelly*, 2020 WL 3571863, at *3 (citing *In re Marriage of Hansen*, 733 N.W.2d 683, 697–99 (Iowa 2007)).

Here, we agree Darwin's change in employment, work travel requirements, and residence amount to a substantial change in circumstance. This satisfies our threshold inquiry. So we must consider whether it would be in the children's best interests to shift to a joint physical-care arrangement.

However, we are generally wary of disturbing a functioning physical-care arrangement. *See Frederici*, 338 N.W.2d at 158 (holding once a physical care arrangement has been fixed, "it should be disturbed only for the most cogent reasons"). And we are especially wary of disturbing physical care when doing so would undermine the stability and continuity of the family relationship. *See Hansen*, 733 N.W.2d at 697. Here, the current physical-care arrangement is working well for the children. Neither party disputes that Jennifer was the primary caregiver for the children when she and Darwin were married. She has continued in that role since the dissolution. And "where one spouse has been the primary caregiver, the likelihood that joint physical care may be disruptive on the emotional development of the children increases." *Id.* at 698. Plus Jennifer and Darwin's parenting relationship is not well suited to joint physical care. *See Vrban*, 359

N.W.2d at 423. Their text messages reveal substantial hostility. For example, when discussing financial matters related to the children, Darwin texted things like "Fuck you" and "It's war." Moreover, Jennifer and Darwin have differing parenting approaches. All things considered, we are convinced it is not in the children's best interests to transition to joint physical care.

**b. Visitation**

In the alternative, Darwin argues the district court should have granted him additional visitation time with the children. The district court did, in fact, expand Darwin's visitation time from two to three weeks during the summer and added additional holiday visitation. But Darwin believes this was not enough. We disagree.

"A different, less demanding burden applies when a parent is seeking to change a visitation provision in a dissolution decree." *In re Marriage of Brown*, 778 N.W.2d 47, 51 (Iowa Ct. App. 2009). "A parent seeking to modify visitation must only establish 'that there has been a *material change in circumstances* since the decree and that the requested change in visitation is in the best interests of the children.'" *Id.* at 51–52 (citation omitted). Here, Darwin established a material change in circumstances. So we are left to determine if granting him all of his requested additional visitation would be in the children's best interests.

On appeal, Darwin requests visitation "every other Thursday at 3:30 [p.m.] to Monday at noon or when school starts, plus 2 nights per week when Darwin and

the boys[3] do not have weekends together."[4]   This approach would functionally amount to joint physical care.  He would have the children four nights per week every other week, plus two more nights in the off-weeks, all in addition to the expanded holiday and summertime visitation granted by the district court.  And, like the district court, we think this back-and-forth schedule would be "unduly disruptive to the children's schedules."  Because the requested additional visitation is not in the children's best interests, we decline to grant it.

### c. Child Support

Darwin next argues the district court erred in refiguring his child-support obligation because it incorrectly computed his gross income.[5]  The district court found that Darwin's year-to-date gross income was $41,521.90[6] through June 26, 2020.  From there, the district court divided $41,521.90 by twenty-five (the number of complete weeks thus far in 2020) to reach a $1660.88 weekly income average. The court then multiplied that figure by fifty-two weeks to reach an annual income of $86,365.55.

---

[3] The oldest child has reached the age of majority and is no longer subject to visitation.

[4] Darwin already had visitation every other weekend beginning on Friday at 3:30 p.m. and ending on Sunday evening under the terms of the original decree. So his request here is to elongate the weekend from Thursday afternoon to Monday morning, plus four additional weeknights each month.

[5] The court may modify child support "when there is a substantial change in circumstances."  Iowa Code § 598.21C(1) (2019).  Here, the district court found Darwin's job change, which reduced his income, amounted to a substantial change in circumstances.

[6] This excludes an additional $3,299.23 Darwin was paid as "benefit dollars" that are not part of Darwin's taxable earnings because they must be applied towards the cost of insurance coverage.

Darwin argues the court erred by including $3291.12 in "profit sharing" earnings in his annual income because there was no testimony establishing those payments would recur. Additional income such as overtime, bonuses, or profit sharing can be considered when "determining the appropriate support amount under the child support guidelines." *See In re Marriage of Franzen*, No. 13-0774, 2014 WL 1495486, at *4 (Iowa Ct. App. Apr. 16, 2014). However, when the additional pay "appears to be an anomaly or is uncertain or speculative," then it should not be considered. *See id.* (citation omitted). Here, Darwin's paystubs show him accruing profit sharing pay during the year. This suggests profit sharing was not a one-time type of payment and should be considered when determining Darwin's income. *See id.*; *cf. In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991) (providing a district court must determine the income of the parties by the most reliable evidence presented). Because the district "court's determination was within the range of evidence," we affirm. *See McKee*, 2021 WL 4592258, at *4 (citing *In re Marriage of Rife*, No. 19-0679, 2020 WL 1542314, at *4 (Iowa Ct. App. Apr. 1, 2020)).

**d. Attorney Fees**

Finally, we address attorney fees awarded by the district court and requested on appeal. "Generally, attorney fees are not allowable unless authorized by statute or contractual agreement." *FNBC Iowa, Inc. v. Jennessey Group, L.L.C.*, 759 N.W.2d 808, 810 (Iowa 2008). Iowa Code section 598.36 provides, "In a proceeding for the modification of an order or decree under this chapter the court may award attorney fees to the prevailing party in an amount deemed reasonable by the court." So attorney fees are recoverable in modification

proceedings at the court's discretion. *See In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999).

### *1. District court attorney fees*

Darwin challenges the district court's award of $1500 in attorney fees to Jennifer. Darwin argues because Jennifer did not file a counterclaim specifically requesting fees she is barred from recovering them.[7] However, Darwin does not provide, and we have not found, any support for his claim. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

Darwin also questions how the court could have awarded attorney fees when Jennifer did not know the total amount of attorney fees she incurred. But Jennifer testified she incurred at least $3000 in fees and had to put $2000 worth of fees on a credit card. So we conclude the district court did not abuse its discretion.

### *2. Appellate attorney fees*

Both parties request appellate attorney fees. Appellate attorney fees are awarded upon our discretion and not as a matter of right. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). When considering whether to award fees, "we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (citation omitted). Considering these factors,

---

[7] Jennifer requested attorney fees in her answer to Darwin's petition for modification.

we do not award Darwin any appellate attorney fees.  We award Jennifer $4000 in appellate attorney fees.[8]

**AFFIRMED.**

---

[8] Jennifer requests $4000 in fees and provides an affidavit of fees in support of her request.