# IN THE COURT OF APPEALS OF IOWA

No. 21-1860
Filed March 30, 2022

**IN THE INTEREST OF B.L.,**
**Minor Child,**

**A.L., Mother,**
　　Appellant.

_____

Appeal from the Iowa District Court for Winnebago County, Karen Salic, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Jane M. Wright, Forest City, for appellant mother.

Thomas J. Miller, Attorney General, Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Carrie Rodriguez, Garner, attorney and guardian ad litem for minor child.

Considered by May, P.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights, claiming the juvenile court should have applied a permissive exception to preclude termination of her parental rights. We, like the juvenile court, decline to apply a permissive exception, pursuant to Iowa Code section 232.116(3) (2021). We affirm.

## I.    Background Facts & Proceedings

This family came to the attention of the Iowa Department of Human Services (DHS) in June 2020. B.L., born in 2013, called law enforcement because she could not wake her mother. A child protective service assessment was initiated. Concerns about the mother's substance abuse and her inability to care for her daughter highlighted this initial investigation. B.L. had lived with her maternal grandfather in Minnesota for the 2019-2020 school year because of the mother's use of methamphetamine. Sometime after B.L. completed kindergarten and before the start of the assessment in June 2020, B.L. moved in with her mother. The mother admitted to consistent use of illegal substances before her daughter's return but denied she was currently using. The child abuse assessment was founded, and voluntary services were offered to the mother. While the mother agreed to participate, she disappeared during the open service case.

The mother reappeared at B.L.'s school in August. While dropping B.L. off for school, the mother asked a school employee for assistance, expressing concern for B.L.'s safety due to the mother's involvement with gang activity in Minnesota. The mother relayed ongoing mental-health and substance-abuse struggles. She expressed she was fearful for her life and B.L.'s life. The mother also stated that the gas and water had been shut off in her home.

An employee from the school agreed to take B.L. home with her for the evening to provide the mother some relief, however, the mother failed to reappear for B.L. the next morning. The mother could not be located. An emergency removal order was secured. B.L. was placed first with a fictive kin, and then moved to a foster care placement, where she remained at the time of the termination proceedings. B.L. was adjudicated a child in need of assistance (CINA) on October 2, pursuant to Iowa Code section 232.2(6)(c)(2) (2020).

Following adjudication, the mother was involved in criminal activity in Minnesota. At a review hearing in September 2020, the mother was encouraged to enter a long-term substance-abuse program. The mother declined to do so and was arrested several days later in Hennepin County, Minnesota, for forgery, and then transferred to Martin County, Minnesota, for other pending charges. When released from jail, she was arrested on a new charge of possession of methamphetamine. Following release from jail, the mother entered treatment and completed a twenty-eight-day program. After she completed the program in October, she allowed a male friend to move into her home.[1]

The mother also completed a court ordered psychological evaluation in November, which revealed she struggled with many difficulties, including child psychological abuse, post-traumatic stress disorder (PTSD), major depressive disorder, anxiety, stimulant use disorder (amphetamine and cocaine), alcohol use disorder, and a mild intellectual disability.[2] The report concluded that the mother

---

[1] The mother claimed that she has been sober since October 2020.
[2] The mother contests the accuracy of the evaluation, claiming she was under the influence of methamphetamine when it was conducted.

was not capable of caring for or nurturing a child, and advised that contact between the mother and child should be closely monitored. In late November, the mother required an emergency room visit for suicidal ideation. She also continued to struggle with involvement in the criminal justice system, resulting in convictions and placement on probation.

A law enforcement raid was executed on the mother's home in January 2021. B.L. arrived the next day for a visit and found the house in disarray, causing B.L. significant distress. The mother's boyfriend was arrested following the raid. The mother had allowed this boyfriend to be on FaceTime calls with B.L. despite directions to the contrary, and instructed B.L. to lie about his presence. In early February, the mother was participating in outpatient treatment at Prairie Ridge, but was discharged due to attendance issues. The mother began services with a different provider. Her attendance, with the exception of February to May, was generally consistent. The mother fled Iowa from February to May to avoid arrest.

Upon her return, the mother began a relationship with another man. The mother was instructed that this individual was not allowed to be present during visits, but an incident occurred where the mother demanded B.L. give the man a hug and kiss. The mother and this man had a fight in July when he injured her wrist and threatened her via a series of text messages and voicemails. The mother reported to law enforcement she feared for her life. But at the termination hearing, the mother admitted she remains in an emotional relationship with this individual. A caseworker involved with the family also testified that the mother informed her she was still in a relationship with this man as recently as a month before the termination hearing.

The mother has a history of domestically violent relationships and admitted at trial that B.L. had witnessed at least two instances of domestic violence. And at the time of the termination hearing, the mother minimized the domestic abuse between herself and one of the men that occurred in July 2021. After over thirteen months since B.L.'s removal, the mother was unable to recognize any danger to B.L. that her relationships may cause. When the mother was asked at the termination if this individual would be safe to have around B.L., she responded, "I don't know. He's got kids. In certain ways, yes and certain ways no. It's really hard to say."

When placed in foster care, B.L. initially settled in but later struggled with following rules and exhibited a pattern of lying. She was noted to be aggressive, particularly with a family pet. Behavioral Health Intervention Services were initiated with B.L., and her behaviors improved. B.L. continues to work in therapy and with her foster parents on issues of relationships, behaviors, and honesty.

The mother's visitation did not progress beyond supervised visitation since B.L.'s removal. Visits between the mother and B.L. are reported to be generally positive. However, there was an incident on November 5, 2021, when a family support specialist became concerned that someone was upstairs in the house during a visit between the mother and B.L. Rather than let the support specialist check if someone else was home, the mother elected to end the visit early.

On another visit, B.L. told the support specialist that she had received a toy from her mother but clarified that her mother had not stolen it. She then conceded that the mother may have stolen it. The mother admitted that B.L. had witnessed her steal items on previous occasions.

While the mother has for the most part cooperated with drug testing, she had a positive drug test in February for methamphetamine and in May 2021 for methamphetamine and cocaine, both after completion of treatment. The mother also engaged in therapy services but missed three sessions shortly before the termination hearing. The mother has not been consistent in reporting to her probation officer, who reports the mother has "generally been non-compliant with probation supervision."

The State filed a petition to terminate the mother's parental rights on September 17, 2021. The termination hearing occurred on November 19. The court heard testimony from DHS, the mother's parents, the family support specialist, and the mother. The court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) and (*l*) (2021). The mother appeals.

## II.     Standard of Review

We review the termination of parental rights de novo. *In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021). "While we are not bound by the juvenile court's factual findings, we accord them weight, especially in assessing witness credibility." *Id.* (quoting *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018)). Our fundamental concern is the best interests of the child. Iowa R. App. P. 6.904(3)(n).

> We use a three-step analysis to review termination of parental rights. First, we "determine whether any ground for termination under section 232.116(1) has been established." If we determine "that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." Finally, if we conclude the statutory best-interest framework supports termination, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights."

*A.S.*, 906 N.W.2d at 472-73 (citations omitted).

## III.    Discussion

The mother does not contest the existence of a statutory ground for termination or whether the termination was in B.L.'s best interests.  As such, we need not address the first two steps of a termination analysis.  *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The mother contends the district court should have found her close bond with B.L. precludes termination under an exception to termination found in section 232.116(3)(c).  That section allows a court to decline to terminate a parent's rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."  The factors in section 232.116(3) "are permissive, not mandatory." *A.S.*, 906 N.W.2d at 475.  The parent resisting termination bears the burden of establishing the applicability of an exception.  *Id.* at 476.  "We may use our discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'"  *Id.* at 475 (quoting *In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016)).

Both the mother and B.L.'s maternal grandfather testified to a close bond the mother and B.L. share.  In contrast, the DHS caseworker described the relationship as more of a relationship between peers than a traditional parent-child relationship.

While acknowledging a bond, under the facts in this record, such bond does not preclude termination.  "[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs."  *In re D.W.*,

791 N.W.2d 703, 709 (Iowa 2010). Here, the mother cannot provide a safe and stable home for B.L., evident by her ongoing relationship with dangerous men, mental-health struggles, ongoing involvement in the criminal justice system, and her tenuous grasp on sobriety. The mother has not demonstrated by clear and convincing evidence that termination will be detrimental to B.L. Accordingly, we decline to apply a permissive exception to termination.[3]

**AFFIRMED.**

---

[3] The mother in passing requests a six-month extension for reunification efforts. However, "passing reference to an issue, unsupported by authority or argument, is insufficient to raise the issue on appeal." *State v. Louwrens*, 792 N.W.2d 649, 650 n.1 (Iowa 2010). Given the lack of authority or argument concerning a six-month extension, we do not consider this issue on appeal.