# IN THE COURT OF APPEALS OF IOWA

No. 25-1375
Filed November 13, 2025

IN THE INTEREST OF O.A.-C. and Z.F.,
Minor Children,

H.M., Father,
    Appellant,

T.R., Mother,
    Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Matthew A. Schuling, Judge.

A mother and father separately appeal the termination of their parental rights.  **AFFIRMED ON BOTH APPEALS.**

Sara E. Benson of Meldrum & Benson Law, P.C., Council Bluffs, for appellant father.

Whitney A. Estwick, Omaha, Nebraska, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Abby Davison, Council Bluffs, attorney and guardian ad litem for minor children.

Considered without oral argument by Tabor, C.J., and Badding and Sandy, JJ.

**TABOR, Chief Judge.**

Finding no parent had "fully engaged" in services to help reunite them with O.A.-C. and Z.F., the juvenile court terminated the parental rights of these boys' mother and their fathers. The mother, Tia, and O.A.-C.'s father, Howard, appeal.[1] They both challenge the grounds for termination and contend that severing their rights was not in the children's best interests because of the parent-child bonds. They also contend that the State did not make reasonable reunification efforts. After our independent review of the record, we reach the same conclusion as the juvenile court.[2] The State offered clear and convincing evidence that the brothers could not be returned home and the "ongoing uncertainty" was not in their best interests. We thus affirm the termination order.

## I. Facts and Prior Proceedings

This matter first came to the attention of the Iowa Department of Health and Human Services in March 2023 when child protection workers confirmed a report that Tia was using methamphetamine while caring for O.A.-C. (who was seven years old) and Z.F (who was almost three). Tia completed a hair follicle test that was positive for amphetamine, methamphetamine, and THC. Following the test, Tia engaged in voluntary services. Her drug tests were consistently positive only for THC until December 2023, when she tested positive for amphetamine and methamphetamine, as well as THC. The children were removed from Tia's care.

---

[1] The third parent, father to Z.F., also appealed. But the supreme court dismissed his appeal for failure to comply with court orders.
[2] We review termination-of-parental-rights proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted).

In March 2024, the juvenile court adjudicated O.A.-C. and Z.F. as children in need of assistance (CINA). At that time, O.A.-C.'s father was unknown.[3] The court ordered the family to participate in solution-based casework services and ordered Tia to receive updated evaluations for substance use and mental health. The court also ordered mental health counseling for the children. Throughout the CINA proceedings, O.A.-C. and Z.F. lived with foster parents.[4]

One year after the CINA adjudication, the State petitioned to terminate the parental rights of the mother and both fathers. The court held a hearing in May and July 2025. In an August 2025 ruling, the court granted the State's petition, finding none of the parents had actively participated in the services offered to them during their CINA case. The court also expressed concern about Tia's "significant and destructive use of drugs." She missed eighteen of the twenty-three scheduled drug screens. For four of them, she tested positive for methamphetamine and amphetamine. For one of her clean tests, the court noted allegations that Tia falsified the drug screen. Beyond testing, Tia claimed to have completed treatment, but the social work case manager was unable to confirm that completion. And despite being ordered to obtain an updated psychological evaluation with an IQ test, Tia had not done so by the time of the termination hearing. Again, she claimed to have done so, but her case manager called the mental health providers and was unable to confirm Tia's compliance.

---

[3] In October 2024, the department confirmed that Howard was O.A.-C.'s father. The department did not notify him about the CINA case until late November 2024.
[4] Originally, Z.F. resided with his paternal aunt, but he eventually moved in with his brother.

Stable housing and employment were also concerns for the juvenile court. Because a fire damaged her apartment, Tia found herself without a place to stay. But she turned down temporary homes arranged by the department, opting to live with friends. By the start of the termination hearing, her apartment had been renovated, and she moved back in and had visits with her children there. But as of the last day of the hearing, she had been served with a seven-day eviction notice. Tia testified that she worked at Hy-Vee, but the court appointed special advocate (CASA) spoke with the grocer's human resources department and discovered that Tia had not worked there since 2022, when she was employed for eight days.

As for family counseling, the case manager gave Tia a list of therapists with contact information. But Tia did not follow up because "it was a hassle" to find a therapist. In the words of her case manager, "She hasn't displayed indicators that she has made changes in her life. She hasn't been drug screening. She's not in substance abuse treatment, or we can't verify that she is . . . . The same problems that opened this case are still going on now."

Neither was Howard fully engaged in services. To his credit, the case manager testified that Howard took advantage of every opportunity to maintain contact with his son. But Howard faced other hurdles. After the department confirmed in the fall of 2024 that he was O.A.-C.'s biological father, the caseworker explored whether he was a placement option. Howard lived in Omaha, Nebraska with his wife and their daughter. But home studies completed by Nebraska authorities under the Interstate Compact on the Placement of Children (ICPC) revealed Howard's criminal history, including domestic violence and firearm

convictions. His name was also listed on that state's child abuse registry based on the "sexual assault of a child in 2012." He denies that abuse allegation, claiming his stepdaughter lied about the incident.[5] The Nebraska agency completed a home study and recommended placement contingent on Howard's ability to have his name expunged from the registry. Howard's expungement request was denied, then denied again on administrative appeal. As a result, Nebraska denied the ICPC request to place O.W.-C. with Howard. At the termination hearing, Howard testified he was trying to appeal the denial of his request for expungement.

Beyond his criminal history, Howard was slow to cooperate with court orders. In March 2025, the court ordered Howard to undergo a mental health evaluation. Howard objected, claiming he already had a therapist.[6] By the July date of the termination hearing, Howard testified that he had "reached out" to various providers to schedule a mental health evaluation, but had "not yet received a phone call back." And Howard's interactions with O.A.-C. were limited to "therapeutic visits." Because Howard had not been involved in O.A.-C.'s life until November 2024, the department recommended starting with family therapy sessions. Howard complains his case manager did not recommend normal visits. But his own behavior slowed the progress. Howard admitted at the termination hearing that he recorded sessions with his first therapist. That breach prompted the first therapist to terminate family sessions. After finding a second therapist, he

---

[5] According to the home study, the stepdaughter did admit fabricating the allegation.
[6] The record shows that the therapist he was seeing was recommended after he underwent cancer treatment in 2000. The caseworker did not believe that his "cancer therapist" was addressing his general mental health.

sought to record their conversations outside of the building. That therapist also terminated their sessions. By the time of termination hearing, he had not found a new therapist, and so had lost contact with O.A.-C. Not recognizing the impact of his actions, Howard testified that he feels like "they're just finding everything in their power not to place [O.A.-C.] with me."

During the CINA case, the boys struggled with their mental health and attended therapy. Their foster mother reported to O.A.-C's therapist that he had frequent bathroom accidents after visits and family therapy sessions with Howard and Tia. He also struggled to sleep at night. Overall, O.A.-C. became "angry and anxious" over the constant changes in his life. Z.F. also suffered. His therapist diagnosed him with adjustment disorder with disturbance of emotions and conduct. His therapist further noted that Z.F. struggled with emotional regulation and resisted discussing his feelings.

After hearing the evidence, the juvenile court terminated Howard's rights to his son O.A.-C. under Iowa Code section 232.116(1), paragraphs (e) and (f) (2025). It also terminated Tia's rights to O.A.-C. and Z.F. under section 232.116(1), paragraphs (e), (f), and (*l*). Both parents appeal.

## II. Analysis

In their petitions on appeal, Tia and Howard make similar arguments. First, they challenge the grounds for termination. Second, they argue termination is not in the boys' best interests. Third, they argue the State failed to provide reasonable reunification services. Fourth, they argue the court erred in declining to delay permanency. Lastly, Tia argues an exception applies to preclude termination but does not clarify which exception.

We generally review termination proceedings under a three-step analysis. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). First, we evaluate whether the State has proven a statutory ground for termination under section 232.116(1). *Id.* Second, we assess whether termination is in the children's best interests under section 232.116(2). *Id.* Third, we consider whether any exceptions listed in section 232.116(3) preclude termination. *Id.*

## A. Grounds for Termination

Howard and Tia both contest all the grounds for termination cited by the juvenile court. "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Here, we focus on section 232.116(f). That section permits termination if the court finds:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

Tia and Howard both contest the fourth element, claiming the State failed to prove by clear and convincing evidence that the children could not be returned home. We assess whether the children could safely be returned to parental custody at the time of the termination hearing. *See In re J.E.*, 723 N.W.2d 793, 799 (Iowa 2006) (interpreting "returned to the custody" as whether the child could

*safely* return to the parent's care); *A.S.*, 906 N.W.2d at 474 (interpreting "at the present time" to mean the point of the termination hearing).  We turn to each parent's claims.

Tia argues the children could be returned to her custody because she completed substance abuse treatment and their visits took place in her home, meaning "the home itself was deemed safe for the children to be present."  True, the case manager testified she did "not necessarily" have safety concerns about the apartment.  But the real concern lies with Tia's substance use.  The court found "Tia's testimony to be very suspect," and we find inconsistencies ourselves in the transcript.  For example, Tia testified that she did not complete any urine drug screens in 2024, but the case manager's report shows two urine tests from 2024 which were positive for methamphetamine, amphetamine, and THC.  Nor has Tia been able to prove she completed substance-use treatment.  Her drug use, alongside unstable living arrangements, is clear and convincing evidence that it is not safe for O.A.-C. or Z.F. to return to her custody.

Howard argues he has been denied a chance to demonstrate his ability to safely parent, and thus the State has not met its burden.  But Howard did not cooperate with his therapists, nor did he progress beyond therapeutic visits.  And Howard has been unable to remove his name from Nebraska's child abuse registry so that the home study can be approved.  We find the State proved by clear and convincing evidence that O.A.-C. could not be returned safely to Howard's custody at the time of the termination hearing.

Howard also argues the State did not prove element three, because the removal period was running before he learned that he was O.A.-C.'s father.  But

"[p]hysical removal from the mother [was] sufficient to start the statutory timelines counting toward termination as to either parent." *In re Z.P.*, 948 N.W.2d 518, 523 (Iowa 2020) (citation omitted). The State may rely on evidence that the child was never in the father's custody before paternity was established to satisfy the statutory time requirement. *Cf. In re J.B.L.*, 844 N.W.2d 703, 705 (Iowa Ct. App. 2014) (analyzing six-month requirement in Iowa Code section 232.116(1)(h)). So we reject the father's argument on element three.

Termination was proper for Tia and Howard under section 232.116(1)(f).

## B. Best Interests of the Children

Next, we address the parents' best-interests claims. In determining best interests, we give primary consideration to the children's safety, to the best placement for furthering their long-term nurturing and growth, and to their physical mental, and emotional condition and needs. Iowa Code § 232.116(2).[7]

Tia claims it would be in her children's best interests to return to her custody because she has completed substance-use treatment, so they would suffer no harm under her care. We disagree. Like the juvenile court, we are skeptical that she had completed treatment and was no longer using illegal substances at the time of the hearing. And "[w]e gain insight into the child[ren]'s prospects by reviewing evidence of the parent's past performance—for it may be indicative of the parent's future capabilities." *In re M.S.*, 519 N.W.2d 398, 400 (Iowa 1994). Tia missed most of her drug tests, never completed the ordered psychological testing, didn't arrange family therapy because "it was a hassle," and has not progressed

---

[7] Tia combines the second and third steps—sections 232.116(2) and (3)—into one argument. We unravel them in our analysis.

beyond fully supervised visitations. Plus, the record shows that their prolonged instability was negatively affecting the children. Under these circumstances, the State met its burden to prove termination was in the children's best interests.

Howard similarly argues termination is not in O.A.-C.'s best interests. He points to his commitment to O.A.-C. since discovering his paternity, his stable housing with his wife and daughter, and his employment. But Howard did not commit himself to the therapeutic visits with O.A.-C. Two therapists terminated sessions with him due to his insistence on recording conversations, and at the time of the termination hearing, he had not found a new therapist. Particularly illuminating is the deterioration of O.A.-C.'s mental health following his visits with Howard. Also relevant, the ICPC study to place O.A.-C. with him was denied, and his inability to remove his name from the Nebraska registry is concerning. The State met its burden in proving termination is in O.A.-C.'s best interests.

### C. Exceptions to Termination

In her petition on appeal, Tia alleges exceptions apply to preclude termination under section 232.116(3). But she runs into two snags. First, she did not raise this argument at the termination hearing. Since Tia bears the burden of proving an exception, she cannot take a passive approach to error preservation. *See In re J.R.*, 20 N.W.3d 839, 842–43 (Iowa Ct. App. 2025); *A.S.*, 906 N.W.2d at 476 (holding that parent resisting termination bears burden to establish an exception under section 232.116(3)). Second, Tia does not specify which exception applies.[8] So there is nothing for us to review.

---

[8] Tia mentions a "strong bond" with her children. But that minimal mention does not preserve a claim under Iowa Code section 232.116(3)(c), which states the

### D. Reasonable Efforts for Reunification

Next, both Tia and Howard argue that the State failed to offer reasonable efforts toward reunification. Neither parent preserved this issue for review. To challenge the adequacy of reunification services, a parent must raise the issue "at the removal, when the case permanency plan is entered, or at later review hearings." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). Parents must request different services in court; "voicing complaints regarding the adequacy of services to a social worker is not sufficient." *Id.* Neither Tia nor Howard point to anywhere in the record where they asked for other services. At the hearing, Howard claims he sought "additional therapeutic visits . . . over and over," but he does not specify when, and we do not find these requests to the court in the record. Neither parent preserved error on this issue.[9]

### E. More Time for Reunification

Lastly, we address the parents' arguments that they should have been given more time to reunite with their children. *See* Iowa Code § 232.117(5) (permitting court to deny termination and enter a permanency order under section 232.104). They both contend that instead of termination, they should have been granted a six-month extension to participate in services. *See* Iowa Code § 232.104(2)(b).

---

court need not terminate if it finds "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *See State v. Louwrens*, 792 N.W.2d 649, 650 n.1 (Iowa 2010) ("[P]assing reference to an issue, unsupported by authority or argument, is insufficient to raise the issue on appeal.").

[9] The juvenile court did address reasonable efforts in its ruling, reasoning: "Upon review of the many offered services and the refusal of the parents to engage with these services, the Court finds that reasonable efforts have been made to achieve the primary permanency goals for the children in interest." We agree with that assessment.

Both parents asked for more time as an alternative remedy at the end of the termination hearing. But the court did not expressly rule on those requests in terminating their parental rights.

Assuming without deciding that error was preserved, we don't see delaying permanency as a viable option. To continue placement for six months, section 232.104(2)(b) requires the court to decide "the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). On this record, we are also unconvinced that more time would remove the barriers to reunification for either parent. Nor would it be in the children's interests to wait for permanency. *See In re W.T.*, 967 N.W.2d 315, 323–24 (Iowa 2021).

**AFFIRMED ON BOTH APPEALS.**