# IN THE COURT OF APPEALS OF IOWA

No. 24-1705
Filed January 9, 2025

**IN THE INTEREST OF G.H.,**
**Minor Child,**

**I.H., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan Cox, Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Sonia M. Elossais of Carr Law Firm, P.L.C., Des Moines, for appellant father.

Brenna Bird, Attorney General, and Mackenize Moran, Assistant Attorney General, for appellee State.

Lisa Allison of Allison Law Firm, LLC, Des Moines, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Buller and Langholz, JJ.

**GREER, Presiding Judge.**

The juvenile court terminated the father's parental rights to his child, G.H., born in 2022, under Iowa Code section 232.116(1)(h) and (i) (2024). The father now appeals, making several claims. He argues there was not clear and convincing evidence that the child could not be returned at the time of termination, under section 232.116(1)(h), there was not clear and convincing evidence the purported abuse endangered the life of the child, under section 232.116(1)(i)(2), nor was there clear and convincing evidence the conditions that led to the abuse could not be rectified by services under section 232.116(1)(i)(3). In addition, the father argues termination is not in the best interests of the child and, because the father has a strong bond with the child, termination would be unduly detrimental to the child.

We review termination of parental rights proceedings de novo. *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). "We review the facts and law, and adjudicate [anew] those issues properly preserved and presented." *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). After our review, we find clear and convincing evidence the father's parental rights were properly terminated under section 232.116(1)(h).

**Preservation of Error.**

Before we discuss the merits of the father's appeal, we address the State's argument the father did not properly preserve error because the father did not attend the termination hearing. Our court was asked to rule on the same issue in another case, *In re J.R.*, which we decided en banc and is also filing today. No. 24-0942, 2025 WL _____, at *_ (Iowa Ct. App. Jan. 9, 2025) (en banc). In *J.R.*, we

recognized "[t]here 'is some tension in our cases' regarding what a parent must do

to protect their right to appeal a termination of parental rights" before clarifying:

> First, . . . there is no categorical rule that a parent must personally participate in a termination hearing to preserve error or prevent a waiver on appeal. A parent's physical or remote participation in the hearing is a due process right, *In re M.D.*, 921 N.W.2d 229, 236 (Iowa 2018), but it is not a requirement for a parent represented by an attorney, *see Jack v. P & A Farms, Ltd.*, 822 N.W.2d 511, 518 (Iowa 2012) (citing *In re J.S.*, 470 N.W.2d 48, 52 (Iowa Ct. App. 1991)). Even in the parent's absence, counsel may preserve issues for appellate review and avoid waiver by advocating the parent's position on the parent's behalf—including by challenging the State's evidence, introducing the parent's own evidence, or making arguments against termination.[1]
>
> Second, our preservation rules are not one-size-fits-all. While issues generally must be raised in and decided by the juvenile court before they are raised on appeal, that is not the case when a parent argues the State failed to meet its burden of proof. Our supreme court has instructed that "the sufficiency of the evidence may be challenged on appeal even though not raised below." *In re A.R.*, 316 N.W.2d 887, 888 (Iowa 1982) (holding the preservation rule now codified under Iowa Rule of Civil Procedure 1.904(1) applies to juvenile proceedings);[2] *cf. State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022) ("[A] defendant who proceeds to trial and has been convicted of a crime has, in fact, preserved error with respect to any claim challenging the sufficiency of the evidence.").

*Id.*

Here, although the father did not personally attend the termination hearing,

his counsel objected to the termination of the father's parental rights at the onset

of proceedings and renewed the objection during closing arguments. Additionally,

---

[1] We do not reach the issue of whether the mere appearance of a parent's attorney is enough to clear the preservation and waiver hurdles because that is not the situation in the case before us. *Cf.* [*In re*] *M.L.H.*, [No. 16-1216,] 2016 WL 4803999, at *1 [(Iowa Ct. App. Sept. 14, 2016)] (finding a father's appeal was either waived or unpreserved where his "attorney did not introduce any evidence," "did not make any argument against termination," and told the court the father had "given up").

[2] Rule 1.904(1) provides that when the court tries an issue of fact without a jury "[a] party, on appeal, may challenge the sufficiency of the evidence to sustain any finding without having objected to it by motion or otherwise."

his counsel participated through questioning witnesses during the proceedings on the father's behalf. Thus, we consider the merits of the father's appeal.

**Statutory Grounds.**

We now address the merits of the father's argument. The juvenile court determined the termination of the father's parental rights was proper under section 232.116(1)(h) and (i). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We address father's termination of parental rights under section 232.116(1)(h), which reads:

> [The court may terminate parental rights if the] court finds that all of the following have occurred:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The first three elements of section 232.116(1)(h) are not disputed: the child was just under two years old at the time of the termination hearing; the child was adjudicated a CINA after a combined adjudication and removal hearing on May 10, 2023; and after receiving reports of child abuse resulting in physical injury, the child was removed from the parent's care on March 28, 2023, more than six months before the July 8, 2024 termination hearing. But as to the fourth element, the father contends the State failed to prove the child could not be returned to the father's

custody because the Iowa Department of Health and Human Services (the department) did not make reasonable efforts for reunification and the father was appropriately suited to regain custody of his child at the termination hearing. After de novo review, we agree with the juvenile court that the State proved the statutory ground for termination under section 232.116(1)(h).

In his appellate brief, the father made passing reference that the department failed to assist him in providing "seasonally appropriate clothing" for the child. First, we question if the father appropriately preserved error on this reasonable-efforts challenge, as required under section 232.102(7). *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (recognizing "[t]he State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent"). The father failed to raise this argument before the time of the termination hearing and the father failed to take advantage of the "reasonable efforts" that specifically went to the attempts to support reunification. As a result, the argument comes too late to preserve error:

> Complaints regarding services are properly raised "at removal, when the case permanency plan is entered, or at later review hearings." Where a parent "fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." Similarly, we will not review a reasonable efforts claim unless it is raised prior to the termination hearing.

*In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015) (cleaned up). We find the father failed to preserve error to this challenge.[3]

---

[3] We also note that, even if it was properly preserved, the father provides no argument or authority to support his reasonable-efforts challenge in his appellate brief. *See State v. Louwrens*, 792 N.W.2d 649, 650 n.1 (Iowa 2010) ("Moreover, passing reference to an issue, unsupported by authority or argument, is insufficient to raise the issue on appeal.")

As for his statutory grounds challenge, although the father was not present, his counsel objected at the termination hearing before the presentation of evidence and renewed the objection to termination of parental rights during closing statements, "[W]e would ask the Court to decline to terminate the father's parental rights and . . . return [the child] home, given the progress Dad has made toward being a safe, stable parent."  But, evidence presented at the termination trial supported the juvenile court's finding that the child could not be returned to the father at the time of the hearing pursuant to section 232.116(1)(h)(4).

The social work case manager assigned to the case had several concerns pertaining to the father's ability to provide a sober, safe, and stable home for the child.  To the father's credit, he maintained employment, or actively searched for employment, from the start of this matter to the termination hearing.  The father also maintained a safe house, with no obvious hazards, and toys for the child.  We recognize the father has worked hard to improve his financial standing and maintain an appropriate physical structure to house himself and the child.  But the concerns voiced by the social work case manager were focused on serious concerns over the father's drug use, domestic violence between the mother and father, and the father's mental health.  In the end, the father failed to address and resolve these concerns so that the child could be returned at the time of the termination hearing.

Leading up to the termination trial, the father missed or did not comply with drug screens at least twice—once in May and again in July 2024.  Even when he was alerted that missed drug screens are counted as positive drug screens, the father did not complete many of the drug screens.  Of the drug screens the father

did comply with, he tested positive for cocaine on sweat patches collected on September 7, 2023; October 24; February 22, 2024; and March 23. Despite the multiple positive drug tests, the social work case manager testified the father was not honest with the provider during his substance-use evaluations, failing to mention his cocaine use. Thus, the juvenile court determined the father had neither admitted the use of cocaine nor taken real steps to address amphetamine abuse, although he reported attending some of the recommended substance-use courses pertaining to alcohol usage.

The father's unaddressed substance use is enough for our court to find termination is appropriate:

> [I]n considering the impact of a drug addiction, we must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future. Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting.

In re N.F., 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) (citations omitted). Because the father tested positive multiple times but did not admit to drug use or received substance-use treatment, his use of illegal substances remains a concern. In the time since removal, the father has not shown that he can provide a drug-free home for the child.

Aside from drug abuse, domestic-violence issues remained concerning and unaddressed. The father has failed to acknowledge the social worker's domestic-violence concerns, arguing the courts pressured the mother into making "false allegations of domestic violence." The father did not participate in any domestic-violence services, including domestic-violence classes. The threat of domestic

violence endures, as the mother and father seem to have some type of relationship; both parents showed up to at least one supervised visit together, although the parents were not permitted to jointly attend visits. Such behavior may prevent a parent from maintaining parental rights. *See In re R.D.*, No. 03-0290, 2003 WL 1786531, at *1 (Iowa Ct. App. Apr. 4, 2003) (affirming the juvenile court's finding of termination of parental rights because the father continued to engage in domestic violence and "did not participate in services when given the opportunity"). Relatedly, the father has shown an inability to emotionally regulate throughout this matter, culminating in an angry outburst at the department's staff over a positive drug test and leaving the permanency review hearing before closing arguments.

Lastly, the father has not addressed his mental-health issues, despite the social work case manager's recommendation that he pursue therapy. The guardian ad litem's report to the court stated that the father has experienced trauma of his own, which remains unresolved. To be fair to the father, he completed a mental-health evaluation, which did not recommend therapy. Whether the father should have pursued mental-health therapy, consistent with the assigned social worker's recommendation, though not recommended by the mental-health evaluation, is inconsequential. The father's appeal to maintain parental rights fails on other grounds.

After reviewing the father's progress, weighed against the unresolved issues, we find the State has shown clear and convincing evidence that the father is unable to regain custody of the child. Unresolved substance abuse and domestic violence concerns prevent our court from finding the father maintains a safe and stable household suitable for a child. *See In re M.M.*, 483 N.W.2d 812,

814 (Iowa 1992) (recognizing a child cannot be returned to the parent "if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication").

**Best Interests.**

"Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the child[]'s best interests." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (citation omitted). The juvenile court "give[s] primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *A.M.*, 843 N.W.2d at 112 (citation omitted). "In seeking out those best interests, we look to the child's long-range as well as immediate interests. . . . [W]e look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citation omitted).

The father points to the parent-child bond as the primary reason not to terminate parental rights. The State argues, in response, that the father's argument is predicated on section 232.116(3)(c), an exception to the termination of parental rights, and not a "best interests" argument. We generally agree, but we understand that the parent-child bond might impact those best-interests considerations, so we address the father's argument considering section 232.116(3)(c) below.

After dissecting arguments based on section 232.116(3)(c) from the father's "best interests" argument, little remains. The father offers only conclusory statements:

> In light of this presumption, and considering the available alternatives, the district court should not have terminated Father's parental rights. . . . [T]his Court should overturn the district court's termination of the Father's parental rights as it was in error and contrary to the best interest of the child.

Turning to the factors we consider in determining if termination is in the best interests of the child, we note that the child has been removed from her parents for longer than the child was in their custody. She has thrived in the home with her maternal aunt; her home at the time of the termination hearing. At her current placement, she has the opportunity to socialize with the other children at the aunt's home daycare and have playdates with a cousin, who is about her age. The maternal aunt has been diligent in providing healthcare, taking her to play therapy appointments, and meeting her basic needs. Removing the child from her current home would be unnecessarily disruptive for a young child who has already experienced a great deal of trauma; she deserves a safe, permanent home. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). Termination of the father's parental rights is in the best interests of the child.

**Exceptions to Termination.**

Having found a statutory ground for termination and termination is in the best interests of the child, we now ask if any exception enumerated in

section 232.116(3) applies.[4]  Although the father argues the third exception applies, section 232.116(3)(c), we find no exception rebuts our finding the termination of the father's parental rights is warranted.

Section 232.116(3)(c) allows the court to exercise judicial discretion when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."  *See In re R.M.-V.*, 13 N.W.3d 620, 626–27 (Iowa Ct. App. 2024) ("The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." (citation omitted)).  We weigh the parent-child bond against the parent's inability to meet the child's basic needs.  *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) ("[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs.").  The burden is on the parent appealing the decision to show an exception applies.  *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

The father has not offered any evidence to show the termination of parental rights will be so unduly burdensome on the child that it outweighs the father's unwillingness to address his substance-abuse and domestic-violence issues, preventing a safe and stable home.  It is undisputed the father loves G.H. and he

---

[4] We recognize that in *J.R.*, we concluded the mother waived any argument as to the third issue—whether a permissive exception precluded termination—with her "passive approach" to the issue that was her burden to establish. 2025 WL _____, at *_.  But here, because the father's attorney addressed the statutory exceptions and cross-examined witnesses to draw out evidence in support of them, we conclude he preserved error and reach the merits.

was described as loving and appropriate in FCS reports, but the child's need for permanency outweighs the harm caused by the disruption of the parent-child bond.

We affirm the termination of the father's parental rights.

**AFFIRMED.**

Langholz, J., concurs; Buller, J., partially dissents.

**BULLER, Judge** (concurring in part and dissenting in part).

I concur in the judgment but dissent from the court's reliance on the reasoning adopted by a majority of this court in *In re J.R.*, No. 24-0942, 2025 WL _____, at *_ (Iowa Ct. App. Jan. 9, 2025) (en banc). I dissent for the same reasons expressed in *J.R.*: this conclusion is inconsistent with many of our unpublished decisions and contrary to fundamental principles of error preservation and our role as a "court for the correction of errors at law." *See id.* at ___ (Buller, J., concurring in part and dissenting in part). And I reiterate my observation that, if the General Assembly disagrees with our court making a policy judgment on whether error must be preserved in particular classes of cases (like criminal or juvenile), legislation can correct this error. *See id.* And I also disagree with the majority's footnote four, which seems to find a claim for a permissive exception preserved through questioning of a witness rather than argument.